UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Norberto Medina-Rodriguez.

   Plaintiff

v.

[1] Canovanas Plaza Rial

[2] Panaderia y Reposteria La Sevillana, Inc.

[3] Econo Rial, LLC

   Defendants

**CIVIL ACTION**

**COMPLAINT**

1.     This is a civil rights action by plaintiff Norberto Medina Rodriguez ("Plaintiff") for

discrimination at the building, structure, facility, complex, property, land, development,

and/or surrounding business complex known as:

>       Canovanas Plaza Rial
>       Carr. 185 Km. 0.9
>       Canovanas, Puerto Rico
>
>       Panaderia y Reposteria La Sevillana, Inc.
>       Canovanas Plaza Rial
>       Carr. 185 Km. 0.9
>       Canovanas, Puerto Rico
>
>       Econo Rial, LLC
>       Carr. 185 Km. 0.9
>       Canovanas, Puerto Rico
>       (hereafter "the Facility")

2.     Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against Co-

Defendant Panaderia y Reposteria La Sevillana, Inc., a for-profit corporation

incorporated under the laws of Puerto Rico, Co-Defendant Econo Rial, LLC, a for-profit

corporation incorporated under the laws of Puerto Rico, and Co-Defendant Canovanas

Plaza Rial, a corporation, partnership, or sole proprietorship doing business as Canovanas

Plaza Rial (hereinafter collectively referred to as "Defendant" or "Defendants"), pursuant

to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA").

## JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.     All actions complained of herein take place within the jurisdiction of the United States

District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C.

§ 1391(b), (c).

6.     Defendants own, operate, and/or lease the Facility, and consist of a person (or persons),

firm, and/or corporation.

7.     Plaintiff is a Puerto Rico resident, lives in Carolina, Puerto Rico, is *sui juris*, and qualifies

as an individual with disabilities as defined by the ADA. Plaintiff is severely limited or

unable to engage in the major life activity of sitting, standing, and walking. Prior to

instituting this action, Plaintiff suffered from a "qualified disability" under the ADA and

the Puerto Rico Department of Motor Vehicles issued a permanent handicap permit (No.

2015982 – parking spaces) to the Plaintiff.

## FACTS

8.     The Facility is a public accommodation facility, open to the public, which is intended for

nonresidential use and whose operation affects commerce. Plaintiff lives in Carolina,

Puerto Rico, approximately 24 minutes away from the Facility by motor vehicle. Prior to instituting this action, Plaintiff visited the Facility over ten (10) times.

9.  Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility in November 2016, among many others. At the time of the filing of this civil action, Plaintiff is personally aware the following barriers at the Facility remain in place and constitute a determent to access:

a)  Plaintiff parked in a space designated as accessible located at the building where Panaderia Sevillana and Supermercado Econo Rial is located. This parking space was closer to the area where Panaderia Sevillana is located. This parking space was less than 8 inches width, had no adjacent access aisle, and no signage or it was faded. Like this specific parking in which plaintiff parked, no other parking space at this shopping center had an accessible access aisle next to it or proper signage in violation of  Section 502.2, 502.3, and 502.6 of the ADAAG. Because the parking spaces were too small and there were no accessible aisles next to the purportedly accessible parking, the violations made it unnecessarily difficult for Plaintiff to transition from his vehicle to outside or his vehicle, to the parking area. Also, because there was no proper signage (Section 502.6)  and the parking need restriping for ADA compliance, the violation to made it unnecessarily difficult for Plaintiff to identify the exact location of the purportedly accessible

parking spaces. Plaintiff felt unsecure and he had to figure out how to get out of

his vehicle despite of illegal configuration of the parking area.



b) The service sales counter of Panaderia La Sevillana was extremely high.

Accordingly, Plaintiff felt deterred from conducting any transactions at the

counter. This violation is readily achievable, i.e. reconfiguration of the counter

space (see image below) or policies and procedures to provide alternate access to

the goods and services.





c)  There was no accessible restroom at Panaderia Sevillana, as there were no grab

bars, no paper dispenser, and the restroom was very small , in violation of

604.3.1, 604.5, 604.6, and 604.7 of the ADAAG. The following is an image of the

toilet at Panaderia La Sevillana. After that image, an image of the entrance of the

restroom at Panaderia Sevillana is depicted, which corroborates that there is no

signage in violation of Section 216.8 of the ADAAG.





d) There was no accessible restroom at Econo Plaza Rial, the toilet paper was not accessible, the trash container obstructs the clear floor space adjacent to the toilet, and the flush control was not on the open side of the water closet, in violation of 604.3.1, 604.6, and 604.7 of the ADAAG. (see image below).



10.     The barriers identified in paragraph 10 herein are only those that Plaintiff personally
encountered. It is Plaintiff's intention to have all barriers which exist at the Facility and
relate to his disabilities removed to afford his full and equal access. Specifically, Plaintiff
is aware of the following barriers which exist at the Facility, both inside and outside
Panaderia La Sevillana and inside Econo Rial, that relate to his disabilities:

a)  This property fails to comply with section with: total number of parking space,
    ADA Section 208 – Table 208.2. Purportedly accessible parking spaces are
    provided for this purpose in the front of the building where the Econo Rial
    supermarket and the La Sevillana bakery are located. However, none are ADA
    compliant and thus, the minimum number of accessible parking spaces is not met.

b)  This property fails to comply with: Parking Sign. ADA compliant parking signage
    is inexistent.

c)  This property fails to comply with: *Location of accessible parking spaces*.
    Accessible parking spaces must be located on the shortest accessible route of
    travel to an accessible facility entrance.

d) A properly configured route of travel is not provided from the building entrance/exit to exterior participation areas.

e) A properly configured accessible route is not provided from the designated accessible parking and public right of way to the designated accessible building entrance.

f) Cross slopes along exterior route of travel exceed the maximum allowable.

g) Designated accessible parking stalls and access aisles exceed the maximum allowable slope.

h) Proper tow-away signage is not provided.

i) Proper identifying pavement markings are not provided at the designated accessible parking stalls and access aisles.

j) Proper identifying signage is not provided at the designated accessible parking stalls.

k) The designated accessible parking stalls and access aisles are less than the required minimum depth.

l) Proper turning space clearances are not provided at the interior seating area of Panaderia La Sevillana.

m) There is no designated accessible interior table seating space (not even improperly located).

n) Proper clear floor area is not provided at container trash station.

o) Proper clear floor area and maneuvering space is not provided at receiving counter.

p) Receiving counter exceeds maximum allowable height and is less than the required minimum width.

q) Point of sale counter exceeds maximum allowable height.

r) Each type of checkout, including express lanes (Econo Rial only), must have an accessible checkout aisle, and the facility is not in compliance with this requirement.

s) Toilet paper dispenser within toiletroom exceeds maximum allowable distance from toilet.

t) Proper identifying signage is not provided at toiletroom.

u) Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of Section 604.5.1 of the ADAAG.

v) Improper configuration of the grab bar and toilet dispenser at Econo Rial in violation of Section 604.5.1, 609.3 and 609.4, of the ADAAG. This barrier is readily achievable thought a reconfiguration of the grab bars and dispenser, as depicted in the following images:





w) The dispenser do not allow continuous paper flow in violation of Section 604.7 of the ADAAG.  Barrier removal is readily achievable by: adjusting the dispenser or replacing the dispenser.

x) There are fire alarms at Econo Rial, but they do not have both flashing lights and audible signals in violation of Section 702.1 of the ADAAG. Audible and visual alarms should be installed.

11.   Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

12.   Plaintiff has knowledge of the barriers described in paragraphs 9-10 and is currently deterred from patronizing defendant's business due to defendant's failure to comply with the ADA. Plaintiff plans to avail himself of the goods and services offered to the public at the property and will return to the Facility once the barriers are removed. Plaintiff believes that the barriers constitute a deterrent to his use of the facility, because it renders it more difficult for him to enter the facility and avail himself to the goods and services offered to the public at the Facility.

13.   Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either

remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair or walker access and to comply with the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

**CAUSE OF ACTION**

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

16.     Plaintiff incorporates the allegations contained in paragraphs 1 through 15.

17.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

24.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

Failure to Make an Altered Facility Accessible

26.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

29.     The ADA also requires reasonable modifications in policies, practices, or procedures,

        when necessary to afford such goods, services, facilities, or accommodations to

        individuals with disabilities, unless the entity can demonstrate that making such

        modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in

        policies, practices, or procedures at the Facility, when these modifications were necessary

        to afford (and would not fundamentally alter the nature of) these goods, services,

        facilities, or accommodations.

31.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees,

        costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.


## CAUSE OF ACTION UNDER STATE LAW

### Article 1802 of the Civil Code of Puerto Rico

32.     Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in

        all paragraphs above with the same force and effect as if herein set forth.

33.     Article 1802 provides one of the most fundamental principles of Puerto Rico

        jurisprudence:

> — that of the Aquilian liability for personal acts — [that] all damage, whether
> material or moral, gives rise to reparation if three requirements are met: first,
> proof of the reality of the damage suffered; second, a causal relation between the
> damage and the action or omission of another person; and third, said act or
> omission is negligent or wrongful.

Sociedad de Gananciales v. El Vocero de Puerto Rico, Inc., 135 D.P.R. 122, 134 (1994),

P.R. Offic. Trans. No. 91-414, slip op. at 10 (citations omitted).  The concept of fault in

article 1802 "is infinitely embracing, as ample and embracing as human conduct is[,]"

Santiago v. Group Brasil, Inc., 830 F.2d 413, 415 (1st Cir.1987); see also Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 8 (1994), and it includes "every kind of human trespass in the legal as well as the moral order." Sociedad de Gananciales v. El Vocero de Puerto Rico, Inc., 135 D.P.R. at 134. "This principle generally rules redress for a wrongful act, even when the wrongful act clashes against the interest or rights guaranteed by the Constitution or by civil rights legislation." Bonilla v. Chardón, 118 D.P.R. 599, 601 (1987), 18 P.R. Offic. Trans. 696, 709-10 (citations omitted).

34.   On or around November 11, 2016, the Plaintiff, was in a motor vehicle at or near the Facility, within the Municipality Canovanas, Puerto Rico.

35.   At said time and place, Defendants were operating a business know as Supermercado Econo and Econo Rial.

36.   At this time and place, it became and was the duty of the Defendants to exercise due care and caution in the operation of its business, having due regard for the public and users of the purportedly accessible parking spaces in front of its business.

37.    At this time and place, the Plaintiff, Medina, was attempting to use the purportedly accessible parking space in front of the business operated by the Defendants, as aforesaid.

38.   At this time and place, the Defendants negligently or intentionally failed to provide an adequate accessible parking space in full compliance with its obligations under federal and state law, thereby interfering with Plaintiff's right to use an adequate accessible parking space.

39.     The Defendants, was then and there guilty of one or more of the following negligent acts or omissions:

   a.   Negligently and carelessly configured its parking space without regard to individuals with disabilities like plaintiff.

   b.   Negligently and carelessly operated or its parking space without regard to individuals with disabilities like plaintiff.

   c.   Failed to do a professional assessment to provide accessible parking, although they had ample time and opportunity to avoid this result;

   d.   Negligently operated its business and parking space in violations of local or state regulations.

   e.   Negligently failed to seek assistance of local or state agencies to prevent a configuration of the parking space that would interfere with Plaintiff's rights under state and federal law.

40.     As a direct and proximate result of one or more of these aforesaid negligent acts or omissions, the Defendant failed to provide an accessible parking space in compliance with state and federal law and thus, deprived, interfered, or limited Plaintiff liberty of movement at the Facility, causing the Plaintiff a loss of enjoyment of a normal personal life.   People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. See Kevin I. Coco, Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Access barriers and segregation in the retail context create social stigma and undermine feelings of

self-worth and independence of persons with disabilities. <u>See</u> Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. <u>See</u> Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life.  <u>See</u> Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

41.    The Plaintiff request a trial by jury on all issues triable by jury.

42.    The Plaintiff invokes the authority of the court to hear a Plaintiff's state law-claims related to the parking of the Facility. The Court has jurisdiction over nonfederal claims between parties litigating other matters properly before the court. 28 U.S.C § 1367.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

18

B.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.  Payment of costs of suit;

D.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E.  Damages under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141, for loss of enjoyment of a normal personal life in excess of **seven hundred twenty-one thousand eleven dollars ($721,011).**

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiff*