**NORBERTO MEDINA RODRIGUEZ**,

      Plaintiff,

      v.

**CANÓVANAS PLAZA RIAL
ECONO RIAL, LLC
PANADERÍA Y REPOSTERÍA LA
SEVILLANA, INC.,**

      Defendants.

Civil No. 17-1943 (BJM)

## OPINION AND ORDER

Norberto Medina Rodriguez ("Medina") brought this action against Canóvanas Plaza Rial, Econo Rial, LLC ("Econo"), and Panadería y Repostería La Sevillana, Inc. ("La Sevillana") (collectively, "defendants"), alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Medina and defendants filed cross motions for summary judgment. Dkts. 177, 182. This case is before me by consent of the parties. Dkts. 17, 18.

For the reasons set forth below, defendants' motion for summary judgment is **DENIED**, and Medina's motion for partial summary judgment is **GRANTED** in part and **DENIED** in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes

demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg* v. *P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan* v. *Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

Designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," Local Rule 56 requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, which the movant contends are uncontested and material. *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008); D.P.R. L. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. D.P.R. L. Civ. R. 56 (c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the local rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

Medina and defendants filed motions for summary judgment accompanied by statements of uncontested facts. Dkts. 177, 178, 179, 182. Parties filed replies and various objections to opposing parties' evidence. Dkts. 187, 189, 204, 205, 216, 217. Regarding parties' statements of uncontested facts and responses thereto, I have disregarded denials or qualifications that were not supported by a record citation. *See Davila v. Potter*, 550 F. Supp. 2d 234, 239 (D.P.R. 2007); D.P.R.

L. Civ. R 56(b), (c), (e). Where parties' record citation does not support or exaggerates the corresponding statement of fact, I have disregarded it.[1] Further, where parties included legal conclusions in their statements of uncontested facts, I have disregarded them. Before proceeding to summarize the record, I will address parties' objections to the evidence offered in support of their respective motions.

To begin, defendants seek to strike Medina's entire declaration, Dkt. 182-4, as a sham. Under the sham affidavit doctrine, a district court may disregard an affidavit that directly contradicts prior sworn testimony. *See Escribano-Reyes v. Professional Hepa Certificate Corp*., 817 F.3d 380, 386–87 (1st Cir. 2016). "Where a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." *Id.* at 386 (citing cases) (internal quotations omitted). Whether there is a contradiction and whether any explanation is satisfactory are highly fact-dependent questions. *Hernandez–Loring v. Univ. Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000). The timing of the change in testimony, i.e., in response to a summary judgment motion, is probative of an attempt to manufacture an issue of fact. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 5 (1st Cir. 1994); *see also Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110 n. 2 (1st Cir. 2006). The court may disregard portions of the affidavit containing unexplained inconsistencies. *Colburn v. Parker*, 429 F.3d 325, 332 n. 3 (1st Cir. 2005). However, the court may not disregard an affidavit pertaining to previously identified incidents that the affidavit merely describes with greater specificity. *Hernandez–Loring*, 233 F.3d at 55.

Here, Medina and defendants both filed motions for summary judgment on August 30, 2019. Defendants based their motion, in part, on Medina's deposition, taken on April 26, and

---

[1] For example, defendants' statement of uncontested material facts asserts that Medina's expert witness "cannot state if there is any sort of fault at the restrooms located at La Sevillana." *See* Dkt. 179 at 8, Defendants' Statement of Uncontested Material Facts ¶ 57. The corresponding record citation supports only the proposition that he has not taken exact measurements of that restroom, not that he cannot testify regarding any fault at the restroom. I have disregarded the exaggerated corresponding statement of fact.

Medina based his motion, in part, on his own declaration, executed on August 21. Defendants assert that Medina's affidavit is a sham designed to create a genuine dispute over material facts by offering statements that contradict Medina's prior deposition. Rather than contradict his deposition, however, Medina's declaration merely elaborates on his physical limitations and the barriers that he alleges he encountered in November 2016. For instance, in his declaration Medina explains that he suffers from degenerative joint disease, that his condition results in limited use of his legs and severe pain while walking, and that he frequently uses a cane for additional support. Dkt. 182-4 ("Medina Decl.") ¶¶ 2–3. Defendants assert that these statements contradict Medina's deposition, in which he explained that he sometimes uses urinals in public facilities, 192-1 at 6 ("Medina Dep."), he has ordered meat while standing at the Econo counter, *id.* at 32–33, he has walked without a cane in the past, *id.* at 49, he has supervised construction work, *id.* at 127–28, and he has done some "physical construction" in his home, *id.* at 125.[2] The facts as stated in Medina's declaration and deposition are not necessarily contradictory. Rather, Medina's affidavit description of his impairment largely corroborates his deposition statements where, for instance, he explained why he has a disability placard: "for the problem that I had in my legs to walk properly. I would lose my balance and fall. I could not walk straight and would fall. It was very hard to walk long distances. I had to stop and lean on something." *Id.* at 13. Further, as a commonsense observation, one could consistently require the frequent assistance of a cane yet retain the capacity to use a urinal, repair a faucet, and order meat.

Defendants also assert that Medina's declaration statements regarding difficulties he experienced when visiting La Sevillana in November 2016 contradict his deposition statements. But there is no inconsistency in Medina's declaration statement that he struggled to use the bathroom and counter at La Sevillana in November 2016 and his deposition testimony that he did

---

[2] Medina points out that defendants submitted only partial translations of his deposition. They provide page 125, in which Medina agrees that he has completed "physical construction," and pages 127–28, in which he explains that he has supervised construction work for his nephew's company. Defendants did not provide page 126, in which, according to Medina, he explained that the "physical construction" he performed in his house included installing an electrical outlet and fixing a leaky faucet. Dkt. 205 at 4.

not know what La Sevillana looked like in April 2019. *Compare* Medina Decl. ¶ 4 (discussing alleged barriers encountered at La Sevillana in November 2016) *with* Medina Dep. at 43 (responding to question regarding whether he knows what the La Sevillana bathrooms are like, "I don't know what they are like because I haven't gone today"). Defendants similarly characterize Medina's deposition statements about the parking spaces and Econo facilities as inconsistent with his declaration statements. Again, however, Medina's statements are consistent: Medina's declaration refers to his experiences at defendants' facilities in November 2016, and his deposition statements refer to his experiences at defendants' facilities on later dates. *Compare, e.g.*, Medina Decl. ¶¶ 5, 8 (discussing difficulties experienced at the shopping center on November 15, 2016) *with* Medina Dep. 113–14 (discussing easier access to the shopping center in April 2019). In short, Medina's declaration is not a sham affidavit because it is not necessarily inconsistent with the statements he gave in deposition.

Nonetheless, I will disregard the portions of Medina's declaration that fail to comply with Federal Rule of Civil Procedure 56(c)(4), which requires that declarations used to support a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Vazquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir. 1998) ("Evidence that would be inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment."); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). If a declaration fails to comply with these rules, the court may sanction the submitting party by striking it from the record. *Moreno Morales v. ICI Paints (Puerto Rico), Inc*., 383 F.Supp.2d 304, 313–314 (D.P.R.2005). However, when a party has at least partially complied, striking the entire declaration is generally too harsh of a sanction. *Id.*; *Perez v. Volvo Car Corp*., 247 F.3d 303, 315–16 (1st Cir. 2001). Rather, the court should approach the affidavit with "a scalpel, not a butcher's knife," disregarding the inadmissible portions and crediting the remaining statements. *Perez*, 247 F.3d at 315. In deciding which parts of an affidavit are admissible at the summary judgment stage,

"personal knowledge is the touchstone." *Id.* However, a bare assertion that a statement is based on the affiant's personal knowledge will not suffice; rather, the affidavit must be factually specific and explain the basis for the affiant's knowledge. *Id.* at 316. Moreover, the "requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (quoting *Perez*, 247 F.3d at 316) (internal quotations omitted).

Paragraph nine of Medina's declaration essentially incorporates the findings of his expert witness regarding alleged deficiencies in defendants' facilities. Medina has personal knowledge of whether he read the expert report. He also has personal knowledge regarding whether a specific barrier adversely impacts him. For instance, Medina knows whether he needs grab bars in a bathroom in order to safely get up or down from a toilet. Medina does not, however, have personal knowledge of his expert's findings. He does not, for instance, know whether the van accessible parking spaces at the shopping center measure 126 inches wide because he did not measure those spaces. *See* Medina Decl. ¶ 9(i); Medina Dep. at 34. I will therefore disregard those portions of paragraph nine in Medina's declaration that recite the findings of Medina's expert because they are not based on Medina's personal knowledge.[3] I will not consider the following: Medina Decl. ¶¶ 9(a) (first sentence), 9(b) (first sentence), 9(c) (first sentence), 9(e) (first two sentences through "slip-resistance surface"), 9(f) (first sentence), 9(g) (first sentence), 9(h) (first three sentences), 9(i) (first two sentences), 9(j) (first sentence and final sentence), 9(k).

Defendants next seek to strike the declaration of Medina's counsel, Jose Vélez Colón, in which he states that he received a true and exact copy of an email sent by Ricardo Pizarro, counsel for defendants, and attaches the email. *See* Dkt. 182-3. Defendants argue that said declaration must be struck for want of personal knowledge. Although Attorney Vélez Colón lacks personal knowledge of whether the contents of the attached email (which provides information regarding

---

[3] If offered through Medina's testimony at trial, they would also be hearsay and could therefore be disregarded separately on that ground. However, at trial Medina could introduce his expert's findings through expert testimony, rather than his own.

defendants' ADA policies) are true, he does have personal knowledge regarding which emails he received. His declaration need not, therefore, be struck for lack of personal knowledge. Rather, the declaration serves to authenticate the attached email in compliance with the requirement that "[d]ocuments supporting or opposing summary judgment … be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (internal citations omitted); *see also United States v. Letscher*, 83 F. Supp. 2d 367, 381 (S.D.N.Y. 1999) ("[I]t is usual for counsel to put documents before the Court on summary judgment motions as enclosures to counsel's affidavit."). Additionally, the attached email is authored by defendants' attorney and contains statements offered on behalf of defendants. Indeed, the email contains the statement, "Defendants provide the following information," followed by a series of statements regarding defendants' policies. These statements are therefore admissible under Federal Rule of Evidence 801(d)(2)(A), classifying as non-hearsay statements "offered against an opposing party … made by the party in an individual or representative capacity." Vélez Colón's declaration need not be struck, and the portions of the email attached thereto constituting opposing party statements may be considered on summary judgment.

Next, Defendants object to paragraphs fifteen through seventeen of the declaration of Pedro L. Alfaro Del Toro ("Alfaro"), Medina's expert witness. *See* Dkt. 182-2 ("Alfaro Decl."). Defendants argue that paragraph sixteen is not based on personal knowledge because it reports information conveyed to Alfaro by Medina's counsel.[4] Alfaro lacks personal knowledge of whether defendants maintain policies regarding ADA compliance. As such, the statements in paragraph sixteen of his affidavit cannot serve to prove whether defendants indeed have such

---

[4] Paragraph sixteen reads as follows: "Counsel Jose Carlos Vélez Colón informed me that he was unable to provide me documents related to the alteration history of the parking lot at the subject property. Similarly, Mr. Vélez informed me that he was unable to provide me written policies, procedures or practices related to the resurfacing and restriping of the accessible parking spaces at the Subject Property. Likewise, counsel Vélez informed that he was unable provide me information related to the internal policies, procedures or documents related to ADA compliance efforts at the Subject Property. Also, counsel Vélez informed that he was unable to provide me information related to the policies, practices and procedures regarding the construction standards and/or guidelines followed at the time of the construction of the subject facility. Finally, counsel Velez informed me that he was unable to provide me any surveys, evaluations and/or assessments relating to compliance with the ADA at the Subject Property." Alfaro Decl. ¶ 16.

policies. However, his statements do not purport to go so far. Rather, paragraph sixteen merely explains what information Alfaro considered in forming his opinion. It need not be struck because Alfaro has personal knowledge of the fact that he did not consider any written policies, standards, or guidelines defendants might have when forming his opinion.

Defendants also argue that paragraphs fifteen and seventeen should be struck because they constitute opinions that were not disclosed to defendants prior to submission of Alfaro's declaration. Under Federal Rule of Civil Procedure 26(e)(2), a party must supplement information included in an expert report or given during deposition. *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 56 (1st Cir. 2011). Tardy disclosures are excluded "unless the failure was substantially justified or is harmless." *Nieto-Vincenty v. Valledor*, 22 F. Supp. 3d 153, 157 (D.P.R. 2014) (citing Fed. R. Civ. P. 37(c)(1)). One of the purposes of this rule is "to avoid trial by ambush." *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003). Courts look to various factors in assessing a Rule 26 error, including the importance of the evidence to its proponent, the opposing party's ability to respond, surprise, prejudice, and the effect of late disclosure on the court's docket. *Id.* at 51; *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998). In paragraph fifteen, Alfaro states that historic imagery from Google Earth indicates that defendants' facilities have not complied with ADA requirements in the past. In paragraph seventeen, he offers an opinion that defendants should adopt formal policies to assure ADA compliance. Neither of these paragraphs must be struck. Defendants have had the opportunity to respond to these statements in their response to Medina's motion for summary judgment, and defendants have access to their own historic records and can thus contest whether they have previously complied with ADA requirements. Further, as explained below, I will defer summary judgment as it relates to defendants' policies. As such, inclusion of Alfaro's statements is harmless.

Next, Medina objects to the affidavit of Julio Bonilla ("Bonilla"), arguing that Bonilla is serving as an expert witness whose identity was not disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. If Bonilla's statement is allowed, Medina would like to depose him "to ascertain his qualification and his real knowledge of the subject matter." Dkt. 205 at 18. Medina's

assertion that Bonilla is serving as an expert witness is without merit. Bonilla is the manager of Econo Rial Canóvanas. Dkt. 189-1 at 1 ("Bonilla Decl."). In his declaration, he identifies a series of attached photos and states as follows: the disputed shopping center is undergoing remodeling, the marking of the van accessible aisle has been relocated to provide an additional two inches to those spaces, the parking lot is maintained as part of an unwritten program, employees are instructed to provide assistance to individuals with disabilities, and Econo maintains unwritten policies regarding ADA compliance. *Id.* None of these statements indicate that Bonilla is serving as anything other than a lay witness.

Nonetheless, Medina's objection to Econo's late disclosure of Bonilla's identity is valid. "Rule 26 requires a party, without awaiting a discovery request, to 'provide to the other parties ... the name ... of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses.'" *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010) (citing Fed. R. Civ. P. 26(a)(1)(A)(i)). "That obligation is a continuing one." *Id.* If a party fails to make disclosures required under Rule 26, that party generally may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion of evidence based on a Rule 26 violation, however, "is not a strictly mechanical exercise." *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77–78 (1st Cir. 2009) (quoting *Santiago–Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006) (internal quotations omitted). "[I]n its discretion, the district court may choose a less severe sanction." *Id.*; *see also Laplace–Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002) ("[D]istrict courts have broad discretion in meting out ... sanctions for Rule 26 violations.") (citation omitted). Here, the late disclosure of Bonilla's identity was largely, but not entirely, harmless. First, Bonilla is a representative of Econo, and Medina had a prior opportunity to depose defendants' representatives but declined. *See* Dkts. 116 at 1, 157-3. Second, some, but not all, of the information set out in Bonilla's statement had been disclosed to Medina long before defendants filed his statement with the court. Defendants filed a statement on October 25, 2018 explaining

that the shopping center was scheduled to undergo remodeling. *See* Dkt. 93-2. On April 26, 2019, Econo informed Medina through discovery that it has a practice of instructing employees to assist individuals with disabilities, that it does not keep written policies or procedures regarding ADA compliance, and that the parking lot is painted as part of a store maintenance program. *See* Dkt. 152-8 at 5. However, Bonilla's statement, filed two weeks after parties submitted their motions for summary judgment, also contains new information which, if considered on summary judgment, would prejudice Medina. Bonilla asserts that various portions of defendants' parking lot have been improved, thus creating a genuine dispute over material facts regarding defendants' compliance with the ADA. He also asserts that Econo maintains unwritten policies regarding ADA compliance. Bonilla Decl. ¶ 12. This statement adds a new wrinkle to Econo's prior disclosure, which indicated only that Econo does not maintain written policies regarding ADA compliance. *See* Dkt. 152-8 at 5. Medina had proceeded on a theory that defendants lack policies for ADA compliance altogether, a theory that is consistent with defendants' prior disclosures but inconsistent with Bonilla's late-disclosed statement. Medina would thus be prejudiced by inclusion of Bonilla's statement on summary judgment. Rather than exclude Bonilla's statement altogether, however, I will grant Medina's request for time to depose Bonilla and defer ruling on summary judgment with regard to the parking lot and defendants' policies.[5] This result permits parties to cure any prejudice that would have otherwise been caused by Econo's late disclosure of Bonilla's identity.

Medina also objects to the declaration of Richard Acree ("Acree"), a proffered expert for defendants, on the grounds that defendants failed to comply with Federal Rule of Civil Procedure 26(a)(2). *See* Dkt. 187-1. Under Rule 26(a)(2), a party who plans to offer an expert witness at trial must disclose the expert's identity accompanied by an expert report. That report must contain, "a complete statement of all opinions the witness will express and the basis and reasons for them; the

---

[5] I will also defer ruling on defendants' argument regarding mootness, which is based on Bonilla's declaration. I nonetheless direct defendants' attention to the following rule: "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).

facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Medina asserts that Acree's declaration fails to satisfy these requirements. This is correct. However, Acree's declaration does not purport to serve as an expert report. It is a declaration. Medina does not clearly state that defendants failed to disclose an expert report altogether, and defendants, having failed to respond to Medina's objection, shed no light on whether they complied with Rule 26. Regardless, I need not rule on Medina's objection at this time because Acree's declaration deals only with defendants' parking lot and policies, issues on which I defer judgment.

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56 submissions: defendants' statement of uncontested facts, Dkts. 179, 189 ("DSUF"), and Medina's statement of uncontested facts, Dkt. 182-1 ("PSUF").[6] Medina reports suffering from osteoarthritis, which limits his mobility and causes pain in his legs. Medina Decl. ¶¶ 2–3. He underwent knee surgery in February 2017, PSUF ¶ 3, and now uses a cane at least some of the time. DSUF ¶ 91; PSUF ¶¶ 34, 46. Medina suffers from impaired balance, PSUF ¶ 55, and uses his cane and other supports to get up and down from a seated position. *Id.* ¶¶ 44–45. Thus, he uses grab bars to get up and down from a toilet, *id.* ¶¶ 44–45, but he can also use a urinal while standing. DSUF ¶¶ 2, 24–25. The Puerto Rico Department of Transportation and Public Works has issued Medina a permanent disabled person's permit, which allows him to park in spaces designated as accessible for those with disabilities. PSUF ¶ 12–13. In the past, Medina worked as a security guard and did not use a cane. DSUF ¶ 16. He has also supervised construction work, DSUF ¶ 35, and made improvements to his home. *Id.* ¶ 34.

---

[6] In his response to defendants' statement of uncontested facts, Medina submitted what he titled "Statement of Additional Facts." Dkt. 204-1 at 25. I disregard these "additional facts" as they duplicate Medina's original statement of uncontested facts.

The Canóvanas Plaza Rial is a shopping center owned by Palmeira, Inc. and open to the general public. PSUF ¶ 16–17, 21. Econo Rial, LLC operates a supermarket in the shopping center, and Panadería y Repostería La Sevillana operates a bakery. *Id.* ¶¶ 21–24. Econo and La Sevillana share a parking lot. *Id.* ¶ 85. The shopping center was designed and constructed after January 26, 1993. *Id.* ¶ 18.

Medina visited the shopping center on November 15, 2016. *Id.* ¶ 26. Medina parked, got out of his vehicle, and used his cane to walk toward the entrance of La Sevillana. *Id.* ¶ 34. Medina used the bathroom inside La Sevillana but found that it was small and had no grab bars around the toilet. *Id.* ¶ 43. He also visited Econo. *Id.* ¶ 51. There, he found that the grab bars in the restroom were not properly installed around the toilet, *id.* ¶ 52, and that the meat counter was too high, making it difficult for him to maintain his balance while conducting transactions. *Id.* ¶¶ 54–55. That meat counter measures 55 inches in height. *Id.* ¶ 105.

Medina has returned to the shopping center since November 2016. DSUF ¶¶ 9, 10. He has used the bathroom at La Sevillana, *id.* ¶ 8, and he has used the urinal at Econo while standing up. *Id.* ¶¶ 22, 24–25. He has also ordered meat from Econo's meat counter, and the store fulfilled his order. *Id.* ¶¶ 12–13.

Medina's counsel retained Pedro L. Alfaro del Toro ("Alfaro"), a licensed architect, to serve as an expert regarding accessibility at the shopping center. PSUF ¶¶ 69, 71; Dkt. 182-2 at 36. Alfaro submitted his qualifications to support a finding that he can testify as an expert witness, and he prepared two expert reports. *See* PSUF ¶¶ 71–82; Dkt. 182-2 at 15–42. Alfaro visited the shopping center on July 4, 2018 and April 3, 2019 to provide observations on mobility-related architectural barriers. DSUF ¶¶ 42, 83–84. In addition to making several observations regarding defendants' parking lot, Alfaro observed the bathroom inside La Sevillana and concluded that it is smaller than the ADA requires, the doors are narrow, the doors lack lever arm handles, the toilet is low, and there are no grab bars. PSUF ¶ 106. Alfaro did not object to the meat counter inside Econo. DSUF ¶ 79.

Since Medina's lawsuit, the shopping center has undergone changes, including some related to the architectural features Medina identified as problematic. The bathrooms at Econo have been remodeled, and Medina has waived all claims related to those bathrooms. PSUF ¶ 53. There is now a sign at La Sevillana indicating that patrons there may go to Econo, which is 30 meters away, for an accessible restroom. *Id.* ¶ 37. The meat counter at Econo, which measures 55 inches, now bears a sign explaining that individuals with disabilities can request assistance. *Id.* ¶¶ 57, 105. The shopping center is currently undergoing reconstruction, and defendants have explained that the reconstruction will contemplate ADA compliance. DSUF ¶ 81, Dkt. 189-1 at 2.

Medina seeks an injunction requiring defendants to provide and maintain an accessible restroom at La Sevillana and an accessible meat counter at Econo pursuant to ADA requirements. Dkt. 182 at 25–26.

## DISCUSSION

As a preliminary matter, I will address defendants' argument that Medina lacks standing. To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Disabled individuals suffer a concrete and particularized injury when they visit an establishment that does not comply with ADA standards." *Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 338 (D.P.R. 2017). Additionally, a plaintiff bringing a Title III ADA claim must "show a real and immediate threat that a particular barrier will cause future harm." *Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (quoting *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003)). In demonstrating a likelihood of future harm, a plaintiff need not "engage in a futile gesture" of continuously confronting discriminatory barriers; rather, knowledge that those barriers remain in place is sufficient. *See* 42 U.S.C. § 12188(a)(1); *Dudley*, 333 F.3d at 305. Furthermore, a disabled individual deterred from visiting a public accommodation because of ADA violations suffers an actual and imminent harm. *See Disabled Ams. For Equal Access*, 405 F.3d at 64 (quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). Standing

is to be "assessed under the facts existing when the complaint is filed." *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n. 3 (1st Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992)).

Medina offers a statement in which he discusses various injuries that occurred when he visited defendants' facilities in November 2016. He explains that he suffers from a walking impairment that requires him to use a cane and makes it difficult for him to maneuver and maintain balance. When he visited the shopping center in November 2016, he found it difficult to navigate the bathroom at La Sevillana because it was small and lacked grab bars. He also explains that the meat counter at Econo was too high, which made it difficult for him to maintain his balance while signing a receipt. According to Medina, these past injuries will continue both because he feels deterred from returning to defendants' facilities and because, when he does return to defendants' facilities, he experiences the same injuries anew.

Defendants argue Medina lacks standing because he was able to use the restrooms and access the services defendants provide without any inconvenience. In deposition, Medina explained that he had returned to defendants' facilities since November 2016, used the urinal at Econo without problem, and ordered meat from the Econo meat counter while standing. Medina Dep. at 37–38, 105–07. None of these statements relate to Medina's injuries, namely difficulty maneuvering the Sevillana bathroom and difficulty maintaining balance while signing a receipt at the Econo meat counter. To suggest that Medina can access all of defendants' facilities without any inconvenience overstates the facts.

Defendants also suggest that Medina lacks standing because he has not actually been deterred from going to their facilities, as he has returned to defendants' facilities since filing his complaint. To have standing, however, Medina need not show that the difficulties he experienced at defendants' facilities prevented him from returning absolutely. Rather, he must show that he was injured by defendants' actions and this court can redress his injury. *See Lujan*, 504 U.S. at 560–61. He must also demonstrate "a real and immediate threat" that defendants' actions will cause future harm. *Disabled Ams. for Equal Access*, 405 F.3d at 64. Medina has shown that defendants'

premises made it more difficult for him to use their facilities, that the difficulty was caused by defendants' high meat counter and small bathroom, and that an injunction requiring defendants to modify their facilities would redress his injuries. The fact that he continues to return to defendants' premises only demonstrates that he will continue to be injured until defendants modify their facilities. Medina therefore has standing to sue defendants under the ADA.

Next, both Medina and defendants assert that they are entitled to summary judgment with regard to all aspects of defendants' facilities. As discussed above, I will defer ruling on parties' summary judgment motions as they relate to the parking lot and defendants' policies to permit Medina to depose Bonilla. Nonetheless, I will address parties' remaining arguments, namely that they are entitled to summary judgment regarding the Econo meat counter and the men's bathroom at La Sevillana.[7]

Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005). To establish a prima facie case pursuant to Title III, a plaintiff "must demonstrate that (1) he or she has a qualified disability under the ADA, (2) the defendant operates a place of public accommodation, and (3) the plaintiff was discriminated against as a result of his or her disability." *Medina-Rodriguez*, 302 F. Supp. 3d at 483 (citing cases). Parties do not dispute that defendants operate a place of public accommodation. However, parties dispute whether Medina has a qualified

---

[7] Although both parties make cursory reference to the cashier counter at La Sevillana, neither Medina nor defendants develop their arguments in a manner sufficient to move for summary judgment. As such, I will not discuss the counter at La Sevillana at this stage. *See* Dkts. 178 at 7, 182 at 9; Fed. R. Civ. P. 56(a) (requiring the movant to show that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law), (c)(1) (requiring parties to cite particular parts of the record to show that there is or is not a genuine dispute regarding a material fact); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

disability under the ADA and whether defendants discriminated against Medina as a result of any disability.

Medina argues that he is entitled to summary judgment on the issue of whether he is disabled under the ADA. An individual is disabled under the ADA when she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). To demonstrate that she has a qualified disability under this definition, a plaintiff must establish that (1) she suffers from a physical or mental impairment; (2) the impairment affects an activity "of central importance to daily life"; and (3) the impairment "substantially limits" that activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011). Walking is a major life activity. 42 U.S.C. § 12102(2)(A). Here, parties agree that Medina sometimes uses a cane and that he has undergone knee surgery. Otherwise, they disagree as to the nature and extent of Medina's walking-related impairment. Although Medina declares that he suffers from osteoarthritis and that his legs will collapse under him if he walks without the support of a cane, defendants challenge the credibility of those allegations. They question whether Medina's pain and incapacity associated with his walking impairment are as severe as he asserts, noting that Medina has not submitted any medical records and arguing that his self-reported pain is inconsistent with his ability to supervise construction work, improve his own home, sometimes walk without a cane, and use a urinal while standing. Although Medina's testimony regarding his walking impairment would permit a reasonable factfinder to find Medina disabled, defendants raise a question as to the severity of Medina's impairment based on his credibility. Resolution of such questions is inappropriate on summary judgment. *Dominguez-Cruz v. Suttle Caribe, Inc*., 202 F.3d 424, 432 (1st Cir. 2000); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994). As such, neither party is entitled to summary judgment on the question of Medina's disability.

Next, both Medina and defendants seek summary judgment regarding whether defendants discriminated against Medina. Generally, public accommodations built for first occupancy after January 26, 1993 ("new construction") discriminate against individuals with disabilities if they are

not "readily accessible to and usable by" such individuals. 42 U.S.C. § 12183(a)(1); *United States v. Hoyts Cinemas Corp*., 380 F.3d 558, 561 n.2 (1st Cir. 2004). A facility is "readily accessible" where "it can be approached, entered, and used by individuals with disabilities . . . easily and conveniently." 28 C.F.R. pt. 36 app. C § 36.401. This standard "contemplates a high degree of convenient access." *Id.* § 36.310. New construction generally must comply with the standards for accessible design promulgated by the Attorney General of the United States. 28 C.F.R. 36.406(a). Public accommodations that were newly constructed or altered after January 26, 1993, but before September 15, 2010, must comply with the Attorney General's 1991 Standards. 28 C.F.R. § 36.406(a)(1). If a public accommodation is required to comply with the 1991 Standards but does not, it must "be made accessible in accordance with the 2010 Standards." *Id.* § 36.406(a)(5)(ii); *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1217 (10th Cir. 2014). Additionally, for public accommodations subject to the 1991 Standards:

> If the 2010 Standards reduce the technical requirements or the number of required accessible elements below the number required by the 1991 Standards, the technical requirements or the number of accessible elements in a facility subject to this part may be reduced in accordance with the requirements of the 2010 Standards.

28 C.F.R § 36.211(c). Requirements governing "new construction" are stricter than those governing "existing facilities." *See Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011) ("Generally stated, existing facilities need not provide as extensive access as new/altered facilities must provide."); *Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 900 (W.D. Wash. 2018) ("The overall policy of the ADA is to require relatively few changes to existing buildings, but to impose extensive design requirements when buildings are modified or replaced.") (internal citations and quotations omitted). Thus, a facility that already existed when the ADA was enacted must only remove "architectural barriers" where doing so is "readily achievable." *See* 42 U.S.C. § 12182(b)(2)(A)(iv). In contrast, new construction must comply with the Attorney General's design standards unless an entity can demonstrate that compliance is "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Hoyts Cinemas Corp*., 380 F.3d at 561 n.2. "Full

compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features." 28 C.F.R. § 36.401(c)(1). Parties agree that the shopping center is a public accommodation constructed after January 26, 1993. *See* Dkts. 62 at 3, 102 at 2, 112 at 2, 113 at 2. As such, the shopping center must comply with the Attorney General's design standards, and failure to comply constitutes discrimination unless defendants show that compliance is structurally impracticable.

Medina and defendants both seek summary judgment regarding the Econo meat counter. "[T]he 1991 Standards require that any transaction counter used for sale or distribution of goods or services to the public have a section with a maximum height of 36 inches." *Johnson v. Wayside Prop., Inc.*, 41 F. Supp. 3d 973, 977 (E.D. Cal. 2014) (citing 28 C.F.R. pt. 36 app. D § 7.2(1)). Parties agree that the meat counter has a height of 55 inches. Facially, then, the counter does not comply with the 1991 Standards requiring a portion of the counter to have a maximum height of 36 inches. Defendants contend that the counter nonetheless complies with the ADA. They argue that modification of the meat counter is not "readily achievable" because it would require redesigning the meat department space, acquiring new equipment, and modifying refrigeration, electricity, cabinetry, and plumbing. They also point out that Medina's own expert witness did not object to the arrangement at the meat counter, which includes a sign offering special assistance to individuals with disabilities.

Defendants' reliance on the law applicable to facilities exiting prior to January 26, 1993 is fatal. The relevant question is not whether lowering the meat counter is "readily achievable," but whether building a 36-inch counter from the outset was "structurally impracticable." 42 U.S.C. § 12183(a)(1). "Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features." 28 C.F.R. § 36.401(c)(1). For instance, certain accessible design requirements are "structurally impracticable" where a building must be built on stilts because it is located in marshlands. 28 C.F.R. pt. 36 app. C § 36.401(c)(1). Not every feature of "unique terrain" makes meeting the design standards structurally impracticable, however. *See, e.g., Caruso v. Blockbuster-*

*Sony Music Entm't Ctr. at Waterfront*, 193 F.3d 730, 738 (3d Cir. 1999) (evidence that a slope had a grade over ten percent was insufficient to show that wheelchair access was "structurally impracticable"). Defendants have pointed to no evidence demonstrating that the Econo meat counter was constructed on unique terrain that would make it structurally impracticable to include a portion of the counter measuring 36 inches in height. Rather, they offer a statement demonstrating that modification of the counter would be costly, *see* Dkt. 74-3 at 1 ("Corretjer Decl." ¶ 7), a point which is irrelevant given that defendants waived all defenses related to insufficient financial resources. *See* Dkt. 131. Additionally, the fact that Medina's expert did not object to the meat counter does not affect whether, under the law, the counter complies with the ADA. Rather, a straightforward analysis applies. The law requires a portion of the counter to measure no more than 36 inches. The counter measures 55 inches. The counter is therefore noncompliant unless defendants show that a lower counter is "structurally impracticable." They have offered no evidence relevant to structural impracticability. Because Medina cites undisputed evidence that the counter measures 55 inches and defendants offer no evidence to demonstrate that a lower counter is structurally impracticable, Medina is entitled to partial summary judgment on this issue: the Econo meat counter violates the ADA. *See* Fed. R. Civ. P. 56 (a) (permitting partial summary judgment on part of a claim or defense); *Alifax Holding SpA v. Alcor Sci. Inc.*, 357 F. Supp. 3d 147, 154 (D.R.I. 2019) (quoting *Minority Police Officers Ass'n of South Bend v. City of South Bend*, 721 F.2d 197, 200 (7th Cir. 1983) ("A partial summary judgment is merely an order deciding one or more issues in advance of trial.") (internal quotations omitted).

Next, both Medina and defendants assert that they are entitled to summary judgment regarding the bathrooms inside La Sevillana. The 1991 Standards require that a toilet in a public accommodation provide properly located grab bars. 28 C.F.R. pt. 36 app. D §§ 4.17.6, 4.22.4. Medina can testify that he visited the men's restroom at La Sevillana and observed that it lacked grab bars, which he requires to maintain his balance. Medina Decl. ¶ 7. Medina's expert witness can testify that he entered the bathroom at La Sevillana and observed that there were no grab bars. Dkt. 182-2 at 30. Defendants do not contest whether La Sevillana has grab bars inside the

bathroom. Rather, they assert that "physical or site constraints" "prohibit modification or addition of elements, spaces, or features" inside the bathroom. Corretjer Decl. ¶ 8. This is a blanket assertion offered without explanation and without reference to grab bars. Defendants do not offer evidence suggesting that La Sevillana was constructed on unique terrain that made the inclusion of grab bars in the bathroom "structurally impracticable." *See* 28 C.F.R. § 36.401(c)(1). Instead, they contend that the bathroom is ADA-compliant because the store directs mobility-impaired customers to go to the Econo bathroom 30 meters away to use an accessible bathroom. Because Medina's uncontested evidence demonstrates that the men's restroom at La Sevillana lacks a grab bar and no evidence suggests that installing a grab bar would be structurally impracticable, Medina is entitled to partial summary judgment on this issue: the absence of grab bars inside the men's bathroom at Sevillana violates the ADA.

Medina also asserts that the bathroom at La Sevillana is smaller than the ADA requires. The 1991 Standards require that the entrance to a toilet in a public accommodation have a minimum clear opening of 32 inches, 28 C.F.R. pt. 36 app. D §§ 4.13.5, 4.22.2; that a toilet room have a 60-inch interior turning space, *id.* §§ 4.2.3, 4.22.3; and that a toilet stall have a minimum width of 60 inches, *id.* § 4.17.3. Medina contends that he used the bathroom at La Sevillana and found that it was so small he struggled to maneuver around the toilet. Medina Decl. ¶ 7. Medina's expert witness, Alfaro, can testify that he entered the restroom and observed that it had an "extremely narrow" door, through which a wheelchair could not pass, and that it lacked an interior moving space with a minimum 60-inch maneuvering diameter. Dkt. 182-2 at 30. Alfaro cannot testify that he took exact measurements of the restroom, Dkt. 192-2 at 13–14, although he is permitted to offer estimates as to the restroom's size. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) (even a lay witness "may estimate size, weight, distance, speed and time even when those quantities could be measured precisely"). Based on this evidence, a reasonable factfinder might conclude that the entrance to the Sevillana bathroom measures less than 32 inches and its interior has a smaller than 60-inch interior turning space. On the other hand, given that neither of Medina's witnesses measured the space precisely, a factfinder might give this

evidence little weight and find that Medina has failed to meet his burden. But the question of what weight to give evidence is not one for the court on summary judgment. *Casas Office Machines*, 42 F.3d at 684. As such, neither party is entitled to partial summary judgment regarding the size of the Sevillana bathroom. *See Anderson*, 477 U.S. at 248 (explaining that the court may not grant summary judgment "if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party").

To sum up, no party is entitled to partial summary judgment regarding whether Medina has a qualified disability or whether the size of the Sevillana bathroom violates the ADA. However, partial summary judgment is appropriate on two issues: the height of the Econo meat counter violates the ADA and the absence of grab bars in the Sevillana bathroom violates the ADA. I will defer ruling on parties' motions as they relate to defendants' parking lot and policies to permit Medina to depose Bonilla regarding those issues. Bonilla's deposition shall occur within 30 days of the date of this order. Parties may submit amended motions for summary judgment addressing defendants' parking lot and policies within 30 days of Bonilla's deposition. Parties are also encouraged to consider settlement.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **DENIED** and Medina's motion for partial summary judgment is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of October 2019.

*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge