## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NORBERTO MEDINA-RODRÍGUEZ**,
　　Plaintiff,

　　v.

**CANÓVANAS PLAZA RIAL, ECONO RIAL, LLC** and **PANADERÍA Y REPOSTERÍA LA SEVILLANA, INC.**,
　　Defendants.

Civil No. 17-1943 (BJM)

### OPINION & ORDER

Norberto Medina Rodriguez ("Medina") brought this action against Canóvanas Plaza Rial, Econo Rial, LLC and Panadería y Repostería La Sevillana, Inc. (collectively "Defendants"), alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"). Medina asked this court for a declaratory judgment that Defendants were in violation of Title III of the ADA and a permanent injunction directing Defendants to comply with the ADA. Dockets ("Dkts.") 62, 297. This case is before me by consent of the parties. Dkts. 17, 18. The matter was tried on September 14 and 15, 2021. Dkts. 398, 400.

For the reasons set forth below, Medina's request for injunctive relief is **DENIED** and his claims are dismissed with prejudice.

### PROCEDURAL HISTORY

Medina filed suit in this matter on July 11, 2017, asking for a declaratory judgment that Defendants were in violation of Title III of the ADA, a permanent injunction directing Defendants to comply with the ADA, costs of suit, and attorney's fees. Dkts. 1, 62. Soon after the initial filing, and after obtaining the consent of the parties, Dkt. 17, the case was referred to me for all subsequent proceedings, including entry of judgment. Dkt. 18.

In due course, Medina and Defendants filed cross-motions for summary judgment. Dkts. 177, 182. I ruled that neither party was entitled to summary judgment on the question of Medina's disability or whether the size of a bathroom within the La Sevillana bakery ("La Sevillana") at the Plaza Rial shopping center in Canovanas, Puerto Rico ("Plaza Rial"), owned by defendant Panadería y Repostería La Sevillana, Inc., was ADA-compliant. Dkt. 221 at 16, 20-21. I granted Medina partial summary judgment that a meat counter in the Econo supermarket ("Econo") at Plaza Rial owned by defendant Canóvanas Plaza Rial, Econo Rial, LLC, violated the ADA. Dkt. 221 at 19; Dkt. 256 at 2-4. I also granted Medina partial summary judgment that the absence of grab bars in the bathroom at La Sevillana was a violation of the ADA. Dkt. 221 at 20. I deferred ruling on the parties' motions as to whether Defendants' parking lot and policies violated the ADA until after an additional deposition took place. Dkt. 221 at 21.

After the deposition took place, Medina again moved for partial summary judgment. Dkts. 247, 282, and Defendants opposed. Dkts. 277, 293. Although Defendants did not move for summary judgment a second time, they renewed their arguments regarding mootness. *See* Dkt. 277 at 7, 10. I denied Medina's motion for partial summary judgment, Dkt. 295, and found that Medina's claim as it related to the absence of signs accompanying accessible parking spaces was moot. Dkt. 295 at 7. I also ordered Medina to show cause why his claim regarding the size of van-accessible spaces should not be dismissed, Dkt. 295 at 22, and I dismissed the claim when he was unable to do so. Dkt. 300. On August 24, 2020, the parties submitted a joint proposed pretrial order. Dkt. 303.

The matter was tried on September 14 and 15, 2021. Dkts. 398, 400. Plaintiff's witnesses were David J. Ruiz, a former bagger and butcher for Econo; Pedro Alfaro-Del Toro ("Alfaro"), an architect who examined the Plaza Rial premises to see if they complied with the ADA; Faustino

Betancourt-Colón, a visitor to Econo ("Betancourt-Colón"); Bryan Muñiz-Betancourt, who worked at Econo as a bagger at the time the incident at issue occurred; and Medina himself. Witnesses for the defense included Pablo Manuel Quiñones Rivera ("Quiñones"), an Econo store manager; Arturo Mayol Corretjer ("Mayol"), a civil engineer who oversaw recent renovations at Plaza Rial; Julio Bonilla Rivera ("Bonilla"), another Econo manager; and Jorge Irvin Rivera-Rosado, the owner of La Sevillana. Both Medina and Defendants submitted exhibits into evidence.

At the close of Medina's evidence, Defendants moved to dismiss under Fed. R. Civ. P. 50, claiming that there was insufficient evidence that Medina was disabled when he visited Plaza Rial and that Medina's claims are moot because Defendants and their properties at Plaza Rial are currently in full compliance with the ADA. I deferred ruling on these motions. After all the evidence had been presented at trial, Medina moved for sanctions against Defendants on the grounds that Defendants had failed to produce evidence, comprised of designs and drawings made by planners for the recent Plaza Rial renovations, that had been requested during discovery. As a remedy for Defendants' failure to produce the evidence in question, Medina requested that testimony given by Mayol stating that he rebuilt Plaza Rial in accordance with the unproduced designs and other materials be disregarded.

Medina's active claims, involving ADA violations, include the following: (1) whether the disabled parking spaces in the Plaza Rial lot are marked so as to discourage parking in them; (2) whether Defendants have failed to maintain the lot in a condition so that it is useable by Medina; (3) whether there is an ADA-accessible route from the street and sidewalk to the Econo and La Sevillana entrances; (4) whether all disabled parking space access aisles adjoin accessible routes; (5) whether two specific van-accessible disabled parking spaces are located on the closest accessible route to an accessible entrance; (6) whether disabled parking spaces serving Econo and

La Sevillana are adequately dispersed; (7) whether the men's restroom at La Sevillana has an accessible door; (8) whether the men's restroom at La Sevillana has an unobstructed 60-inch-diameter turning space; (9) whether the men's restroom at La Sevillana contains toilet stalls; (10) whether the main cashier counter and a new counter at La Sevillana is at a height compliant with the ADA; (11) whether the new counter is regularly staffed; and (12) whether the new counter is impermissibly segregated. Dkt. 303 at 4-7. I previously granted Medina summary judgment regarding his claims that the height of Econo's meat counter was too low and that the La Sevillana bathrooms lacked grab bars, but I will also consider whether these claims are now moot. Medina's counsel acknowledged at trial that his claim regarding the height of the cashier's counter at La Sevillana is moot. Medina previously alleged that the disabled parking spaces at Plaza Rial and accompanying access aisles were too small to comply with the ADA, that the parking lot lacked warning strips, that the parking lot was not smoothly paved, and that the La Sevillana bathroom door handles were not ADA-compliant, but he does not set out these claims in the parties' joint proposed pretrial order. *See id.*

## FINDINGS OF FACT

The following facts are taken from testimony elicited at the September 14 and 15, 2021 trial as well as a list of stipulations by the parties to facts that are not in substantial dispute. Dkt. 303 at 28. Most witness testimony is not in any significant conflict with other parts of the record.

Medina is an adult male who lives in Puerto Rico. He is 6'1" in height. Medina claimed at trial that he has very limited use of his legs and cannot walk far without experiencing pain; he allegedly avoids walking long distances or frequent walking as a result and tries to avoid stairs. He stated that he has an unsteady gait as well as balance issues and that he uses a cane at times to give additional support to his legs. He also said that he had knee surgery, and resulting

complications, in February 2017 and provided photographic evidence supporting this claim. *See*
Plaintiff's Exhibits ("Pl. Exs.") 3, 4. Medina states that he developed bacteria from the surgery,
that he had to have his knee reopened, and that doctors placed new material into or around the knee
in order to help fight the bacteria. Medina averred that he sometimes experiences dizziness, nausea,
and headaches when standing or walking and that his legs sometimes go numb. He testified that
he weighs a little over 250 pounds, although he says that he has noticed no connection between his
weight and his knee issues. Medina also claimed that he has osteoarthritis and diabetes; however,
he provided no medical evidence in support of these diagnoses. He said that he takes medication
for his pain and for diabetes as well. Medina noted that his doctor issued him a permit for parking
in spaces designated for persons with disabilities before the incidents at issue occurred, and a
photograph of his last disabled permit, which expired on June 6, 2021, was admitted into evidence
at trial. Pl. Ex. 5. It is not fully clear to what extent the conditions that Medina cited affected him
when the incidents at issue took place, although Medina did testify that he was already
experiencing knee pain, difficulty walking, leg numbness, and balance issues at the time.

Medina noted that he lives about 8-15 minutes from Plaza Rial depending on traffic. His
main doctor and mailbox are located in the Plaza Rial area, his brother lives nearby in a townhouse,
and his mother-in-law lives close by as well.

On November 15, 2016, Medina visited Plaza Rial. Medina said that when he arrived, he
parked in a spot reserved for disabled people, but found it difficult to park at first because the
parking lot's markings had faded and the signs were confusingly located. Medina also stated that
he discovered that the disabled parking spaces were too small for him to exit his car comfortably
given his knee and other issues.

Witness Betancourt-Colón testified that he visited Econo in or around September 2020, that the disabled parking spaces were still faded and poorly marked, and that the surface of the parking lot was rough. He took photographs of the disabled parking spaces, which show that the disabled spaces pictured were indeed faded and ill-marked. *See* Pl. Exs. 9A, 9B. Witness Bryan Muñiz-Betancourt claimed that during his time as an employee of Econo, which included the date that Medina visited Econo, the paint demarcating the disabled parking spaces was nearly invisible. He also said that he never received any training, feedback, or instruction regarding how to maintain the parking lot or assist disabled customers. Witness David J. Ruiz made similar claims, adding that he never observed any maintenance of the lot over many years of working there. Witness Alfaro, who visited the lot in 2018 and 2019, also attested that the parking lot markings were badly faded, and that the surface of the lot was rough; he testified that several disabled parking spaces lacked direct access to the stores. Alfaro conceded that he has not visited the area recently, and he has no knowledge of its current condition. In all, testimony from five different witnesses strongly supports the notion that disabled spaces in the parking lot were ill-maintained and poorly marked with faded paint when Medina visited the lot. However, none of the witnesses testified as to the precise dimensions of the disabled parking spaces or access aisles.

Medina visited La Sevillana and used the bathroom there; he testified that the bathroom was too small for him to maneuver in and that there were no grab bars around the toilet, noting that using the bathroom caused him discomfort. Medina said that he relies upon grab bars to help him stand up and maintain balance when using the toilet. Alfaro testified that when he visited the store in 2018 and 2019, the men's bathroom at La Sevillana was not ADA-compliant because it did not have adequate floor maneuvering space or grab bars installed; however, although Alfaro testified that he took measurements when he visited La Sevillana and that the dimensions of the

men's bathroom was not in compliance with the ADA, he did not testify as to the exact dimensions of the bathrooms. Additionally, Alfaro testified that the doors of the bathroom were too small, various items within the bathroom were installed at the wrong height, and the handles for the doors were not handles operating by lever as required by the ADA.

Medina also visited the meat counter at Econo, which was located in the same building at Plaza Rial at the time but had a different entrance than La Sevillana. There, he averred that the meat counter was much too high for him to access comfortably given his knee issues and that he experienced pain as a result.

Medina testified that he does not remember ever returning to Plaza Rial after November 15, 2016. However, the parties have stipulated that he did in fact continue to return. Dkt. 303 at 28. Medina also claimed that he plans to return to Plaza Rial in the future, noting the pricing and quality of Econo's pork chops as a particular reason for revisiting the location.

Econo store manager Quiñones testified that Econo never received any complaints regarding ADA issues.

Since Medina filed suit against Defendants, and after Medina's last visit, Defendants have undertaken an extensive remodel of the parking lot and buildings at Plaza Rial. At trial, Defendants provided photographs and testimony that illustrate steps they have taken to attempt to bring Plaza Rial in line with ADA regulations. Defendants have completely redesigned and restructured the Plaza Rial parking lot: according to Mayol and photographic evidence, the new parking lot redesign includes a complete overhaul of the parking layout, several new crosswalks, handicapped parking spaces in front of and near Econo and La Sevillana's entrances, and extensive repainting of the lot with thermoplastic paint, which Mayol stated is a good paint to use on asphalt. *See, e.g.*, Defendants' Exhibit ("Def. Ex.") H1. Mayol testified that he was brought on by Defendants at

Case 3:17-cv-01943-BJM   Document 402   Filed 09/30/21   Page 8 of 28

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,*   8
*Inc.*, Civ. No. 17-1943 (BJM)

least in part to bring the facilities at Plaza Rial into compliance with the ADA. He claimed that he

has to work with the ADA to complete every project that he has ever been involved in, that he

oversaw the Plaza Rial project, and that he tried to bring the Plaza Rial parking lot into compliance

with the ADA. Mayol noted that the project was approved by the Puerto Rican government. He

also testified that Defendants entered into an agreement with his company to maintain the parking

lot; a certified translation of the agreement was admitted into evidence at trial. Def. Ex. T.

According to witness Bonilla, the meat counter at Econo was rebuilt as well; he testified

that the new counter includes a space that is 35 inches high and 40 inches wide and that he

personally measured the space in order to confirm this. Photographs showing the new counter,

which appears to be around the height and width that Bonilla claims, were admitted into evidence.

Def. Exs. G1, G2.

Meanwhile, witness Jorge Irvin Rivera-Rosado testified that La Sevillana has moved to an

entirely new building. Photographs of the new building's bathrooms were admitted into evidence

at trial; they depict bathrooms with grab bars by the toilets and with seemingly expansive floor

space. Def. Ex. B. However, the doors of the bathrooms are not visible.

As stated above, this matter went to trial on September 14 and 15, 2021. Dkts. 398, 400.

After duly considering the evidence and testimony put forward by the parties, I render my opinion

as follows.

## APPLICABLE LEGAL STANDARDS

Congress passed the ADA "to provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title

III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of

public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005). To

establish a prima facie case pursuant to Title III, a plaintiff "must demonstrate that (1) he or she has a qualified disability under the ADA, (2) the defendant operates a place of public accommodation, and (3) the plaintiff was discriminated against as a result of his or her disability." *Medina-Rodriguez v. Farmacia Medina Inc.*, 302 F.Supp.3d 479, 483 (D.P.R. 2017) (citing cases). Parties do not dispute that defendants operate a place of public accommodation. However, parties dispute whether Medina has a qualified disability under the ADA and whether defendants discriminated against Medina as a result of any disability.

A party must also have standing to bring a claim before this court. "The necessity to establish constitutional standing is rooted in the case or controversy requirement of the Constitution." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003); *see* U.S. CONST. art. III, § 2. "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1962)).

In order to obtain standing, a plaintiff "must show that (1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can be fairly traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." *New Hampshire Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "In the context of Title III of the ADA, a plaintiff generally must 'show a real and immediate threat that a particular (illegal) barrier will cause future harm.'" *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (quoting *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003)). "[A] plaintiff must demonstrate standing separately for each form of relief sought."

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). The

evidence relevant to the standing inquiry consists of the facts as they existed at the time the plaintiff

filed the complaint. *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 849 (N.D. Cal. 2011); *see,*

*e.g.*, *Lujan*, 504 U.S. at 569 n.4.

To raise a cognizable ADA claim, a plaintiff must be disabled. "The term 'disability'

means, with respect to an individual-- (A) a physical or mental impairment that substantially limits

one or more major life activities of such individual; (B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . ." 42 U.S.C.A. § 12102; *see also* 29 C.F.R.

§ 1630.2. "There is no per se rule about either the type or quantum of evidence that a plaintiff

seeking to establish a disability must supply." *Mancini v. City of Providence*, 909 F.3d 32, 39 (1st

Cir. 2018). "The applicable enforcement provision, § 12188, allows only forward-looking,

injunctive relief"; plaintiffs in ADA cases are not entitled to monetary damages. *G v. Fay School*,

931 F.3d 1, 11 (1st Cir. 2019).

Generally, public accommodations built for first occupancy after January 26, 1993 ("new

construction") discriminate against individuals with disabilities if they are not "readily accessible

to and usable by" such individuals. 42 U.S.C. § 12183(a)(1); *United States v. Hoyts Cinemas*

*Corp.*, 380 F.3d 558, 561 n.2 (1st Cir. 2004). A facility is "readily accessible" where "it can be

approached, entered, and used by individuals with disabilities . . . easily and conveniently." 28

C.F.R. pt. 36 app. C § 36.401. This standard "contemplates a high degree of convenient access."

*Id*. § 36.310. New construction generally must comply with the standards for accessible design

promulgated by the Attorney General of the United States. 28 C.F.R. 36.406(a). Public

accommodations that were newly constructed or altered after January 26, 1993, but before

September 15, 2010, must comply with the Attorney General's 1991 Standards. 28 C.F.R. §

Case 3:17-cv-01943-BJM   Document 402   Filed 09/30/21   Page 11 of 28

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,* 11
Inc., Civ. No. 17-1943 (BJM)

36.406(a)(1). If a public accommodation is required to comply with the 1991 Standards but does

not, it must "be made accessible in accordance with the 2010 Standards." *Id*. § 36.406(a)(5)(ii);

*see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1217 (10th

Cir. 2014). Additionally, for public accommodations subject to the 1991 Standards: If the 2010

Standards reduce the technical requirements or the number of required accessible elements below

the number required by the 1991 Standards, the technical requirements or the number of accessible

elements in a facility subject to this part may be reduced in accordance with the requirements of

the 2010 Standards. 28 C.F.R § 36.211(c). Requirements governing "new construction" are stricter

than those governing "existing facilities." *See Am. Ass'n of People with Disabilities v. Harris*, 647

F.3d 1093, 1101 (11th Cir. 2011) ("Generally stated, existing facilities need not provide as

extensive access as new/altered facilities must provide."); *Twede v. Univ. of Washington*, 309 F.

Supp. 3d 886, 900 (W.D. Wash. 2018) ("The overall policy of the ADA is to require relatively few

changes to existing buildings, but to impose extensive design requirements when buildings are

modified or replaced.") (internal citations and quotations omitted). Thus, a facility that already

existed when the ADA was enacted must only remove "architectural barriers" where doing so is

"readily achievable." *See* 42 U.S.C. § 12182(b)(2)(A)(iv). In contrast, new construction must

comply with the Attorney General's design standards unless an entity can demonstrate that

compliance is "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Hoyts Cinemas Corp.*, 380

F.3d at 561 n.2. "Full compliance will be considered structurally impracticable only in those rare

circumstances when the unique characteristics of terrain prevent the incorporation of accessibility

features." 28 C.F.R. § 36.401(c)(1). Parties agree that the shopping center is a public

accommodation constructed after January 26, 1993. *See* Dkts. 62 at 3, 102 at 2, 112 at 2, 113 at 2.

As such, the shopping center must comply with the Attorney General's design standards, and

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,*   12
*Inc.*, Civ. No. 17-1943 (BJM)

failure to comply constitutes discrimination unless defendants show that compliance is structurally impracticable.

Even if a party has standing to bring a claim, the case may be moot. "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *Mangual*, 317 F.3d at 60 (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)). "A case is moot when the issues are no longer live or the parties no longer have a legally cognizable interest in the outcome." *Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004). "[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." *Id.* "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Mangual*, 317 F.3d at 60.

"The burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" *Id.* (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)) (alteration in original). "It must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); see also *Friends of the Earth, Inc.*, 528 U.S. at 170.

## DISCUSSION

### A. Standing

#### i.      *Is Medina Disabled?*

Medina contends he is disabled under the ADA. It is beyond dispute that Medina has experienced knee impairments.[1] The standard that a plaintiff must meet in order to attain standing

---

[1] Medina claims that he also has osteoarthritis, is obese, is diabetic, and suffers from dizziness, but in crafting his claims, all of these ailments and symptoms are essentially disregarded by Medina in favor of the knee issues and resultant difficulties that he allegedly suffers from. Since little to no evidence was offered regarding these other conditions and since Medina has not made it entirely clear what role the other conditions played in the matter at

as a disabled person is low. *See* 29 C.F.R. § 1630.2(j)(1)(iii) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis.")

Under *Mancini*, Medina's knee impairments would have to "substantially limit major life activities" in order to be considered a disability. 909 F.3d at 43–44. It is Medina's burden to identify the major life activity or activities that are substantially affected by his impairment. *Id*. However, a detailed description of Medina's limitations, standing alone, could be sufficient to overcome the relatively low bar created by the substantially-limits standard. *Id*. As *Mancini* notes, "[a] relatively low bar, though, is not the same as no bar at all." *Id*. at 44. "[A plaintiff] must still be able to point to some competent evidence in the . . . record sufficient to show substantial limitation. . . . [and it] does not suffice merely to allege in a wholly conclusory fashion, without any further details or supporting documentation, that an impairment substantially limits one's major life activities." *Id*.

Unlike Mancini, Medina testified to how his impairments affected his daily activities and his activities when he visited Plaza Rial. Medina noted that when he visited Plaza Rial, he had already received a disabled parking permit from his doctor, he generally had difficulty walking far, he had difficulty exiting his car because his parking space was too narrow, and he experienced discomfort as a result; he also stated that he had trouble in the bathroom at La Sevillana because grab bars help him stand up and balance when using the toilet; and he averred that it causes him pain to be handed something heavy over a high counter, and that he in fact experienced pain from

_____

hand, I focus my attention upon Medina's knee issues, although I consider the other purported ailments inasmuch as they could play an exacerbating role given Medina's knee problems.

Case 3:17-cv-01943-BJM   Document 402   Filed 09/30/21   Page 14 of 28

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,*  14
*Inc.*, Civ. No. 17-1943 (BJM)

using the high meat counter at Econo.  Again, to be found disabled, a plaintiff can show that he suffers from a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C.A. § 12102. Walking, standing, sitting, and lifting are all conditions that are considered major life activities for ADA purposes. *See, e.g.*, 29 C.F.R. § 1630.2(i); *Astralis Condominium Ass'n v. Secretary, U.S. Dept. of Housing and Urban Development*, 620 F.3d 62, 67 (1st Cir. 2010) (noting in finding ample support for ruling that two individuals were disabled that "[one individual] had significant mobility problems stemming from hip, knee, and leg ailments. These conditions made the walk to and from his car difficult. The testimony painted much the same picture as to [the other individual]. The evidence of her mobility problems showed that she walked with great difficulty and pain, resorting to using a cane or even a shopping cart for support, and that locomotion around the common areas of the condominium exhausted her.").

Much of the tangible evidence of Medina's disability, particularly the fact that he has had knee surgery, postdates by several months the time when Medina visited the site, but predates the filing of the complaint. Medina did testify at trial that he experienced pain in relation to his knee at the time of the incidents leading to the origin of the present claim, that he was somewhat incapacitated by problems with his knee at the time as well, and that he had obtained a disabled parking permit from his doctor; I see no reason to doubt his testimony. He also provided some specific testimony at trial about how his knee and other issues functionally limited him.  Yet, Medina stated that he walks with a cane at times, but that he does not do so all of the time, and it is unclear if he used his cane at all at the time he visited Plaza Rial. Medina also claimed that medical records show that he has a disability, but he did not introduce any medical evidence supporting this claim.

Nevertheless, I conclude that on balance, Medina met his burden of proving that he was disabled when he visited Plaza Rial. Again, to be found disabled, a plaintiff can show that he suffers from a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C.A. § 12102. Walking, standing, sitting, and lifting are all conditions that are considered major life activities for ADA purposes. *See, e.g.*, 29 C.F.R. § 1630.2(i); *Astralis Condominium Ass'n*, 620 F.3d at 67. I see no reason to doubt Medina's testimony and find that he has substantial limitations in his ability to sit, stand, and lift heavy items to around his shoulder height as well as substantial difficulty walking. As a result, Medina has met the "low bar" necessary to establish that he has a disability for the purposes of bringing an ADA action.

### ii.    *Injury in Fact*

In addition to being disabled, Medina must also prove he suffered injury in fact in order to have standing to address the ADA violations he alleges. "In the context of Title III of the ADA, a plaintiff generally must 'show a real and immediate threat that a particular (illegal) barrier will cause future harm.'" *Disabled Americans For Equal Access, Inc.*, 405 F.3d at 64 (quoting *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003)). "[A] remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1082 (D. Haw. 2000) ("The policy of the ADA clearly supports Plaintiff's assertion that Defendant must be in total compliance with all ADA regulations. However, this proposition would grant Plaintiff standing to sue on behalf of all the disabled. . . . this Court declines to grant Plaintiff standing to sue for barriers that are not related to Plaintiff's specific disability of non-mobility.").

Medina raises a claim as to whether there is an ADA-accessible route from the street and sidewalk to the Econo and La Sevillana entrances. Medina has offered no evidence that he

experienced any issues accessing the Econo and La Sevillana entrances, he has never attempted to access the Econo and La Sevillana stores from the sidewalk or street except by car, and no witness has testified regarding potential ADA issues pertaining to accessing the store entrances from the street and sidewalk. Plaintiffs are limited to suing over harms that affected them directly.

Medina also claims that an ADA violation could arise if a new, purportedly ADA-compliant checkout counter at La Sevillana is not regularly staffed or if the counter is impermissibly segregated. *See* Dkt. 303 at 6-7. However, Medina has not alleged or testified that these were issues that he faced when he visited La Sevillana, nor does he allege that he has ever visited the new counter or offer an argument as to why staffing or segregation of the counter might be issues. Again, plaintiffs are limited to suing over harms that affected them directly. I note, by the same token, that Medina failed to present evidence at trial that those alleged ADA violations exist.

Medina additionally argues that the La Sevillana bathroom door width was too narrow to be ADA-compliant. *See* Dkt. 303 at 6. Again, Medina has not explained how these issues affected or would affect Medina even if they were in violation of the ADA. Medina has not claimed that he ran into trouble when entering the bathroom, only that he experienced difficulties once he was inside.

Since Medina is limited to suing over harms that affected him directly, he lacks standing to raise claims regarding whether there is an ADA-accessible route from the street and sidewalk to the Econo and La Sevillana entrances, staffing or segregation of the La Sevillana counter, and size of the bathroom doors, as he has not sufficiently alleged or proven that these purported ADA violations actually caused him harm. Accordingly, I dismiss Medina's claims regarding these issues for lack of standing. For the sake of considering mootness, I shall assume that Medina has

standing to bring his other claims, which include whether the disabled parking spaces in the Plaza
Rial lot are marked so as to discourage parking in them; whether Defendants have failed to
maintain the lot in a condition that makes it useable by Medina; whether all disabled parking space
access aisles adjoin accessible routes; whether two specific van-accessible disabled parking spaces
are located on the closest accessible route to an accessible entrance; whether disabled parking
spaces serving Econo and La Sevillana are adequately dispersed; whether the men's restroom at
La Sevillana has an unobstructed 60-inch-diameter turning space; and whether the men's restroom
at La Sevillana contains toilet stalls. I shall also consider whether Medina's claims that the height
of Econo's meat counter is too low and that the La Sevillana bathrooms lack grab bars – claims
that I previously granted him summary judgment on – are now moot.

### B.  Mootness

Defendants contend that any of Medina's surviving claims are moot due to improvements
made at the site. An ADA claim that was valid to begin with "can become moot because of a
change in the fact situation underlying the dispute, making relief now pointless." *Horizon Bank*,
391 F.3d at 53. However, "[t]he burden of establishing mootness rests squarely on the party raising
it, and '[t]he burden is a heavy one.'" *Mangual*, 317 F.3d at 56 (quoting *W.T. Grant Co.,* 345 U.S.
at 633). "It must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be
expected to recur.'" *Id.* (quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203). "To be
considered are the bona fides of the expressed intent to comply, the effectiveness of the
discontinuance and, in some cases, the character of the past violations." *W. T. Grant Co.*, 345 U.S.
at 633.

As a preliminary matter, the parking lot as it existed when Medina visited it on November
15, 2016 violated the ADA in multiple respects. As stated above, five different witnesses claimed

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,   18 Inc.*, Civ. No. 17-1943 (BJM)

that disabled spaces in the parking lot at Plaza Rial were ill-maintained and poorly marked with faded paint around the time that Medina visited the lot. Photos taken by Betancourt-Colón not long after Medina visited depict disabled parking spaces with extremely faded paint. Pl. Exs. 9A, 9B. Alfaro compellingly testified that the parking lot's surface was impermissibly rough in places and that some of the disabled parking spots were improperly located, lacking conformity with ADA standards. Alfaro noted that two disabled parking spaces for vans were located across from the main entrance to Econo and required crossing traffic while another three required disabled individuals to access the entrance by traversing behind cars. According to Alfaro, these parking spaces were not the closest spaces to the entrances and lacked direct access to the entrances as well.

However, the parking lot has since been redesigned and reconfigured. "[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." *Mangual*, 317 F.3d at 60. If the parking lot was reconfigured in a way that brought it into compliance with the ADA, then it is possible that Medina's claim is now moot. However, if some possibility remained that the ADA violation could recur, then Medina's claim would be significantly less likely to be moot. *See, e.g.*, *Friends of the Earth, Inc.*, 528 U.S. at 170.

Due to the remodel of the parking lot, the two van-accessible spaces cited by Medina in his fifth claim no longer exist. As a result, the claim is moot. *Cf. Kohler v. Southland Foods, Inc.*, 459 F. App'x 617 (9th Cir. 2011) (holding that the plaintiff's ADA claims were moot because the specific restaurant in question was closed by the defendant with no plans to reopen it). Moreover, since Medina has not testified that he owns or has ever used a van, I shall not specifically consider the location of van-accessible spaces in Defendants' redesign of the Plaza Rial parking lot.

Defendants have offered evidence suggesting that the parking lot now fully complies with the ADA. Defendants have supplied photographs showing that the lot is currently smoothly paved, well-painted, and clearly marked. *See, e.g.*, Def. Ex. H1. Mayol has testified to the same points. Although I have previously noted that ADA provisions cited by Medina "do not expressly prohibit faded paint," I also reaffirm my belief that under the ADA, "markings must not confuse visitors to such a degree that a non-disabled customer would feel free to park in a space intended for disabled customers." Dkt. 295 at 14; *see also, e.g.*, *Johnson v. Oishi*, 362 F. Supp. 3d 843 (E.D. Cal. 2019).

Testimony from Mayol and the photographs provided by Defendants make it clear that the parking lot is currently clearly painted and in compliance with this principle. At trial, Mayol testified that the lot was completely redesigned and reconfigured in part to attempt to bring the lot into compliance with the ADA. Mayol claims that he has had to deal with the ADA in every project that he has been involved in, that he was hired to design the lot in a way that complied with the ADA, that he oversaw the project, and that he worked to bring the redesigned parking lot into ADA compliance. He states that the parking lot lines had been repainted with thermoplastic paint, which he noted is a good paint to use on asphalt, and that the lot had been repaved smoothly. Mayol testifies that the project had been approved by the government of Puerto Rico as well. Mayol's testimony lends support to Defendants' intention to bring the lot into compliance. Mayol also testified that the renovations were constructed in accordance with plans and designs. I find this testimony to be of little probative value, however, since Defendants did not introduce the plans as exhibits or offer evidence that the plans and designs themselves complied with the ADA.

More importantly, Defendants' photographs of the parking lot show clearly painted and defined disabled parking spaces with adjacent clearly painted access aisles. The access aisles are plainly marked so as to discourage parking in them. 2010 Standards § 502.3.3; *see also, e.g.*, Def.

Ex. H1, H3. The access aisles thus visibly conform to ADA standards. The same is true of the disabled parking spaces in the Plaza Rial parking lot; the parking spaces are now clearly demarcated and display the international symbol of accessibility. *See, e.g.*, Def. Ex. H1, H3. I find that Defendants are currently in compliance with the ADA regarding Medina's claims as to whether the parking spaces in the Plaza Rial lot are marked so as to discourage parking in them.

Moreover, all visible disabled parking space access aisles now adjoin accessible routes. "Access aisles shall adjoin an accessible route." 2010 Standards § 208.3.1. Section 502.3 of the 2010 Standards "contemplates that an accessible route may 'pass behind parked vehicles' or even 'cross vehicular traffic lanes.'" *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858, 866–67 (D. Minn. 2019) (citing 2010 Standards § 502.3); *see also Elguezabal v. GBG Properties Two LLC*, No. ED CV 18-01242-AB (KKX), 2019 WL 6792815, at *2–3 (C.D. Cal. Oct. 2, 2019) (collecting cases). Defendants' photographs of the parking lot show seven disabled parking spots with four accompanying access aisles that directly abut a covered walkway on the side of the Econo building. *See, e.g.*, Def. Exs. H2, H3. Defendants also provide a photograph of the covered walkway, which appears to be wide, well-paved, and free of obstacles. Def. Ex. R. The other seven disabled spaces and four accompanying access aisles that are pictured adjoin a marked aisle connecting all of the parking spaces; one side of this aisle leads to a well-marked crosswalk that connects to a short, broad section of sidewalk leading to a broad covered walkway adjoining the new La Sevillana building. *See, e.g.*, Def. Exs. H4, H5. All of the observable disabled parking spaces thereby adjoin accessible routes to the stores.

Mayol testified that there are additional disabled parking spaces in front of the main entrance to La Sevillana that are not visible in the photographs submitted into evidence by Defendants. Defendants offer no explanation for this strange omission, though it may be because

Defendants believe that Medina lacks standing to challenge the compliance of parking spaces in relation to La Sevillana's new building. *See Alonso v. Alonso*, No. 18-23668-CIV, 2019 WL 5268554 (S.D. Fla. Oct. 17, 2019) (holding that the plaintiff's ADA claims relating to a specific office space formerly under the control of the defendant were moot because the defendant had moved her office to a new location). Regardless, Mayol testified credibly and without contradiction that the disabled parking spaces that are not pictured directly adjoin the main entrance of La Sevillana, and no evidence has been offered suggesting that La Sevillana's old entrance was not ADA-compliant or that its new entrance is not ADA-compliant either.

The parking spaces serving Econo and La Sevillana are also adequately dispersed. "Where parking serves more than one accessible entrance, parking spaces . . . shall be dispersed and located on the shortest accessible route to the accessible entrances." 2010 Standards § 208.3.1. I shall assume that Medina has standing to raise this claim as it relates to the entrances to both Econo and La Sevillana. *But see Alonso*, *supra*. The disabled parking spaces serving Econo are visibly the closest parking spaces to the entrance of Econo. *See, e.g.*, Def. Exs. H1, H2. Again, the disabled spots serving La Sevillana are not pictured in any exhibits, but as explained above, Mayol testified that disabled parking spaces directly adjoin the main entrance of La Sevillana. A parking space that directly adjoins a building's main entrance is incontrovertibly located on the shortest route possible to the entrance. It is unclear which entrance or entrances the other visible disabled parking spaces serve, but testimony and photographic evidence shows that both Econo and La Sevillana's entrances are served by adequately dispersed parking spaces.

Medina raises a remaining claim as to whether Defendants have failed to maintain the lot in a condition that makes it useable by Medina. Though Medina stated this claim in the past tense,

the claim appears to get at whether Defendants' parking lot violations might recur due to poor

parking lot maintenance. *See* Dkt. 303 at 19-20.

A claim can become moot only "if subsequent events make it absolutely clear that the

allegedly wrongful behavior could not reasonably be expected to recur. . . . The heavy burden of

persuading the court that the challenged conduct cannot reasonably be expected to recur lies with

the party asserting mootness." *Friends of the Earth, Inc.*, 528 U.S. at 170; *see also Mangual*, 317

F.3d at 60. However, renovations or structural changes made to bring a location into ADA

compliance – particularly costly, permanent, or substantial ones – are significantly more likely to

moot a claim than, for instance, changes to practices or policies. *See, e.g.*, *Theodore v. 99*

*Restaurants, LLC*, No. 18-CV-368-SM, 2019 WL 4861201, at *9 (D.N.H. Oct. 2, 2019) ("Because

defendants have undertaken substantial, permanent structural renovations to bring [their

restaurant] into compliance with the ADA, and because it is extremely unlikely that defendants

will undo those structural changes in a way that creates future violations of the ADA, plaintiffs'

ADA claims are now moot."); *Langer v. Nenow*, No. 18-CV-01670 (GPC-BGS), 2020 WL

708144, at *3 (S.D. Cal. Feb. 12, 2020) (collecting cases and noting that "[c]ourts are more likely

to find a matter moot on the basis of a voluntary cessation where the defendant remedies a

'structural modification'").

Case law from other circuits suggests that the steps that Defendants took in reconstructing

and reconfiguring the parking lot are sufficient to render Medina's claims moot. In *Hillesheim v.*

*Holiday Stationstores, Inc.*, 903 F.3d 786, (8th Cir. 2018), the court noted in declaring that the

case was moot that "[t]here is no reason to believe that Holiday spent considerable time and money

to renovate its parking lot only to change it back once this litigation is over." *Id*. at 791. *See also*

*Dalton v. NPC Int'l, Inc.*, 932 F.3d 693 (8th Cir. 2019); *Wright v. RL Liquor*, 887 F.3d 361 (8th

*Norberto Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC & Panadería Y Repostería La Sevillana,*  23
*Inc.*, Civ. No. 17-1943 (BJM)

Cir. 2018) (each affirming a district court ruling that remediation of alleged parking lot violations

were permanent such that the violations were not reasonably likely to recur). Defendants fully

renovated their parking lot as well and made extensive and permanent changes to the lot; as in

*Holiday*, there is no reason to think that Defendants would spend considerable time and money

renovating the lot only to change it back once litigation ends.

Case law also supports the notion that Defendants would adequately maintain the lot. In

*Oishi*, the court considered the claim that because a handicap parking space that had impermissibly

faded had been repainted and because the defendants had entered into an agreement with a

contractor to repaint the spot every year, the plaintiff's claim regarding the parking space was moot.

362 F. Supp. 3d at 846. The court noted that "[i]n determining whether a violation can reasonably

be expected to recur, the Court considers whether the defendant has spent considerable sums of

money altering the property to comply with the ADA, as well as the defendant's history of

compliance." *Id*. at 848. The court said that while parking painting is not permanent and is always

in flux, defendants had "provided facts demonstrating that the faded parking paint is unlikely to

recur." *Id*. at 849. In support of this idea, the court noted that "Defendants have entered into an

agreement with a contractor to repaint the parking lot annually regardless of whether the paint has

faded" and that the court was satisfied that "Defendants' agreement to repaint the parking space

every year forecloses any argument that the complained violation is likely to recur." *Id*. The court

also noted that "Defendants do not have a history of noncompliance" and that "Defendants have

demonstrated a commitment to bringing the Store into ADA compliance," noting among other

things that "upon notice of Plaintiff's complaint, Defendants promptly repainted the parking area

and entered into an agreement with the contractor to repaint the lot every year." *Id*. The court

related approvingly that "Defendants also spent a considerable sum of money to renovate the Store

and parking lot and will continue to pay a contractor annually every time the parking lot is painted."
*Id*. Ultimately, the court concluded that "[g]iven Defendant's history of complying with ADA
requirements and the considerable sums of money spent on bringing the parking lot into
compliance, [there is] no reason to believe the handicap parking space will not remain in
compliance. Accordingly, the [c]ourt is convinced that the violations could not reasonably be
expected to recur." *Id*.

On the other hand, the court in *Lozano v. C.A. Martinez Fam. Ltd. P'ship*, 129 F. Supp. 3d
967 (S.D. Cal. 2015), held that despite steps the defendants had taken to refresh the paint on
disabled spaces in their parking lot, the court could not conclude the plaintiff's claim was moot.
The defendants did not undertake a remodel of the parking lot, but they did repaint the disabled
spaces and "adopted new policies and procedures for maintenance" of the spots as well. *Id*. at 970.
Nevertheless, the court found that the defendants had not "satisfied their heavy burden of showing
that the ADA violations at issue are not likely to recur again in the future." *Id*. at 971. The court
noted that "'[w]hether the defendant's cessation of the offending conduct was motivated by a
genuine change of heart or timed to anticipate suit' is relevant to the voluntary cessation analysis."
*Id*. (quoting *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007)). The
court believed that the defendant's actions were timed to anticipate suit. *Id*. The court also noted
that the defendants had only constructed ADA-compliant parking spaces in the first place after
they had settled an ADA lawsuit. *Id*. The court found it relevant that "[u]nlike cases where
defendants would have to undo structural alterations to violate the ADA or would have to actively
implement different policies, here, [the d]efendants could run afoul of the ADA in the future by
mere inaction and allowing the paint on the accessible spaces to fade." *Id*. The court noted that this
was of particular concern because "even though [the d]efendants claim that their previous practice

was to paint the spaces about twice every year . . . the condition of the accessible parking spaces had [nonetheless] deteriorated to the point that the wheelchair logos, striped access aisles, painted lines, and wording had either faded completely away or were barely visible." *Id.* As a result, the court found that the plaintiff's claims regarding the parking lot were not moot.

Here, I find *Oishi* more analogous to the present case. In the present matter, Defendants have entered into an agreement with a contractor to maintain the parking lot and to touch up the paint in the parking lot every six months at maximum, including all regular and accessible parking spaces, accessibility symbols, vehicular and pedestrian traffic lines, and other areas requiring repainting. *See* Def. Ex. T. This agreement requires that the contractor repaint the lot at least twice as frequently as the agreement in *Oishi* required and is also more formal than the steps taken by the defendants in *Lozano*, who appear to have simply adopted an unstated policy that was already in place and who did not enter into any contract with a third party in order to help maintain the lot.

To be sure, Defendants arguably have more of a "history of noncompliance" than the defendants in *Oishi*. However, according to Econo store manager Quiñones, Econo never received any complaints regarding ADA issues. If Quiñones is correct, then Defendants tried to rectify all purported ADA issues once Medina's lawsuit first called their attention to the issues, unlike the defendants in *Lozano*, who had previously been sued for parking lot violations under the ADA yet allowed their parking lot's lines to fade anyway. *See, e.g.*, *Dino N. Theodore & Access with Success v. 99 Rests., LLC*, 18-CV-368-SM, 2019 WL 4861201 (D.N.H. Oct. 2, 2019) (noting in holding that a claim was moot that "while defendants' remediation work can hardly be said to have been entirely 'voluntary,' defendants did respond promptly to plaintiffs' assertions that the restaurant failed to comply with several ADA requirements. As noted above, they immediately hired legal counsel, an architect, and an ADA compliance expert to advise them on how best to address the

issues identified by plaintiffs. . . . Renovation plans were developed quickly and defendants
promptly began substantial interior and exterior construction to bring the restaurant into
compliance."); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)
(establishments should only be required to use their resources to correct access violations that
disabled patrons have actually brought to their attention).

Perhaps most significantly, Defendants have spent a considerable sum of money to
renovate buildings at Plaza Rial as well as the parking lot; despite any other considerations that
may have motivated the renovations, it is clear that Defendants completed the renovations with an
eye to making the parking lot and stores comply with the ADA. This is akin to the actions of the
defendants in *Oishi* but contrasts with the actions of the *Lozano* defendants, who only repainted
the disabled spots in their parking lot and adopted new policies without incurring any significant
changes or expenses.

While I am not bound to follow the opinions of either court, I find the guidance of both
*Oishi* and *Lozano* instructive. Ultimately, however, the facts of *Oishi* are significantly more
analogous to the circumstances at hand. Medina's claim regarding whether Defendants failed (or
will fail) to maintain the lot in a condition that makes it useable by Medina is therefore dismissed.
Accordingly, Medina's claims as to whether the disabled parking spaces in the Plaza Rial lot are
marked so as to discourage parking in them, whether all disabled parking space access aisles adjoin
accessible routes, and whether disabled parking spaces serving Econo and La Sevillana are
adequately dispersed are also moot.

I granted Medina summary judgment that the meat counter in Econo violated the ADA.
However, the meat counter has since been redesigned and rebuilt. Medina's meat counter claim

centered around the fact that the meat counter was too high to comply with the ADA and that he

faced issues when he tried to use the counter as a result. *See, e.g.*, Dkt. 182-4.

Bonilla testified credibly at trial that there is now a section of the meat counter that is 35

inches high and 40 inches wide and that he personally measured the width and height of the

counter. Defendants also provided a photograph of the meat counter depicting a section of counter

that appears to be somewhere around 35 inches high, much lower than the counter that Miranda

complained of. Def. Ex. G1. The assertion that there is now a section of counter that is less than

36 inches high went essentially unchallenged by Miranda at trial. A defendant's permanent

physical improvements are sufficient to moot a case if they provide the requested relief. *See Davis*

*v. Morris-Walker, LTD*, 922 F.3d 868, 870 (8th Cir. 2019); *see also, e.g.*, *Theodore*, 2019 WL

4861201 at *9; *Langer*, 2020 WL 708144 at *3. Since there is a section of the counter that is now

shorter than the maximum height of 36 inches allowable under the ADA, 2010 Standards § 904.4.1,

I find that the counter's height is now in compliance with the ADA. As a result, Medina's claim

as to the meat counter is moot.

Finally, Medina has three remaining claims: whether the men's bathroom at La Sevillana

lacks grab bars in violation of the ADA, an issue that we granted him summary judgment on;

whether the men's restroom at La Sevillana has an unobstructed 60-inch-diameter turning space;

and whether the men's restroom at La Sevillana contains toilet stalls. However, there is a

preliminary issue that moots Medina's claims as to the restroom at La Sevillana: the store has

changed locations and the restroom that Medina's claims pertained to have closed down along

with the rest of La Sevillana's former premises. Since the restroom implicated in Medina's claims

no longer exists and since La Sevillana has moved to another building, Medina's claims as to the

La Sevillana restroom are moot. *See, e.g.*, *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1502 (D.C.

Cir.) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin."); *Johnson v. Rai Rocklin Invs., LLC*, No. 215-CV-02698 (KJM/EFB), 2017 WL 3421848, at *2 (E.D. Cal. Aug. 9, 2017) ("An ADA claim for injunctive relief is moot if the premise complained of closes down with no plans to reopen or if the defendant no longer owns or controls the challenged premises."). Defendants would do well to confirm that the restrooms in their new building are in compliance with applicable ADA standards, but since La Sevillana's new restrooms did not even exist when this suit was filed, Medina's claims pertaining to La Sevillana are moot.

## <u>CONCLUSION</u>

For the above reasons, Medina's claims are **DENIED** and dismissed with prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2021.

S/*Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge